**JOLLAY, Admr. v PENNSYLVANIA RAILROAD CO.**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1678. Decided June 5, 1941.

Mason Douglass, Dayton; A. K. Meck, Dayton; John W. Dale, Dayton, for plaintiff-appellant.

Matthews, Matthews & Altick, Dayton, for defendant-appellee.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment on a directed verdict in favor of the defendant.

The action was for damages for the wrongful death of plaintiff's decedent claimed to have been caused by the negligence of defendant company in the operation of its passenger train at a crossing of its tracks over a public highway known as the Princetown-Glendale Pike north of Port Union, Ohio.

The amended petition averred that William Raymond Jollay, at about 10:30 o'clock A. M., on December 27, 1938, was riding as a passenger in an automobile owned and being driven south-wardly on the aforesaid highway by Courtney Snodgrass toward the aforesaid crossing; that as the automobile came up to the crossing defendant's passenger train, consisting of two engines and several passenger coaches, approached said crossing at a rate of speed of approximately 60 miles per hour; that the automobile and the second engine of said train collided, killing plaintiff's decedent and the driver of the automobile. The amended petition set forth facts intended to disclose that the place where the accident occurred was a dangerous crossing because of the obstruction to the view of one traveling south on the Princetown-Glendale Pike caused by buildings, poles, trees and shrubbery on and to the east of said road in the vicinity of the crossing, which condition, it was alleged, existed on the 27th of December, 1938, at the time that plaintiff's decedent was killed.

The negligence charged against the defendant was,

"In not having a watchman, gates, lights or some other visible warning at said crossing to warn travelers on said highway that said train was approaching said crossing and was about to enter upon said highway; and in not sooner conveying to Courtney Snodgrass and to William Raymond Jollay a warning that said train was approaching said crossing and was about to enter upon said crossing or in not running its said train and keeping it under such control that the train could have been stopped before said collision."

The answer of the defendant admitted the formal averments of the amended petition; that plaintiff's decedent was killed when the automobile in which he was riding came against the side of the second locomotive of defendant's train at the highway crossing and specifically denied all other allegations of the amended petition.

The cause was tried to a jury and after plaintiff had rested, the court on motion of defendant directed the jury

to return a verdict for the defendant which was done. Thereafter motion for new trial was filed and overruled and judgment entered on the verdict. This appeal is prosecuted.

The errors assigned are that the court erred in directing the verdict for the defendant,. in overruling plaintiff's motion for new trial and in rendering judgment for the defendant.

The one legal question presented is whether, under the facts appearing, there is an issue made as to the negligence of the defendant.

The pertinent facts and favorable inferences for the plaintiff to be drawn therefrom are that plaintiff's decedent was riding in a closed automobile as a passenger with Courtney Snodgrass, who was driving; that the day of the accident was very cold and a high wind was blowing from the west; that the approach to the railroad crossing was marked by statutory warning signs; that whistle was blown and the bell rung by the locomotive on defendant's train as it approached the crossing in conformity to §8853 GC, but that plaintiff's decedent may have heard neither signal; that the locomotives which transported said train were each 81 feet long and that the distance from the engine cab on the second engine to the front thereof was about 20 feet; that the automobile collided with the second locomotive at a point between the front thereof and the cab; that a person traveling in an automobile south on the aforesaid highway toward the railroad crossing could not see any train on the railroad tracks while the train was south of a curve in said railroad tracks, which curve was at a distance of 1469 feet to the east of said crossing because of an obstruction to the view of tall trees along the north side of said railroad tracks, immediately north of the railroad right-of-way and that a person traveling in such southerly direction could not see any part of the said tracks east of said highway crossing between the time a person was 430 feet north of said crossing and the time he was 100 feet north of said crossing, and that the engineer,

who was looking out of the window on the north side of the first engine of the train, did not see the automobile at any time on the morning of the collision.

It further appeared that there were buildings, poles and shrubbery to the north of the tracks and said railroad right-of-way which obstructed the tracks as before stated.

Certain photographic exhibits and plats were introduced from which it appears that at a distance 75 feet north of the north rail of the main track one approaching the crossing from the north can see a distance to the east along the railroad tracks of more than 1469 feet and that this visibility is not interrupted at any point from 75 feet up to the crossing; that on the highway at a distance of 100 feet to the north of the north rail on the main track a locomotive can be seen approaching from the east at a distance of 1000 feet from the crossing.

It is urged by counsel for plaintiff in their brief that the trial judge improperly applied the law of **Railroad Company v Kistler, 66 Oh St 326** in holding that inasmuch as the obstructions to the view of plaintiff's decedent were not upon the right-of-way of defendant company, it was not required to take such obstructions into consideration as it approached its crossing and their presence under circumstances appearing in this case, did not make an issue of fact upon the claim that the defendant was negligent in not providing further warning and in driving its train at an excessive rate of speed.

Counsel for plaintiff in their brief urge with much force that the Kistler case has been misinterpreted and was improperly applied to the facts in this case. It is a familiar principle that the law announced in any decision must be considered in the light of the facts appearing. It is claimed that in the Kistler case it clearly appeared that a reasonable warning was given to the occupants of the Kistler vehicle.

It is also pointed out that Miss Kistler, who was acting for her deaf fath-

er, was 216 feet from the railroad tracks when she last looked and her father was 100 feet from the tracks when he last looked and that he should have seen the train because it was visible, as proved by the fact that the engineer on the train saw the oncoming vehicle when it was that distance from the crossing. It is further urged that the court also based the Kistler decision upon contributory negligence.

We are of opinion that the Kistler case is authority, though not the only authority, for the directed verdict. It should be noted that in the Kistler case the petition made the identical averments of negligence as are found here, namely, approach to the crossing at an excessive and dangerous rate of speed and failure to give proper and sufficient signals or warnings of the approach of the locomotive and train to said crossing, and further, and negligently and carelessly allowing and maintaining obstructions to the proper view of its train. It is true the presence of weeds, trees and other obstructions in this case are not made the specific subject of an allegation of negligence but it is obvious that the charge that the defendant company was negligent in failing to give a sufficient and proper warning is predicated largely upon the dangerous condition which it is claimed was created in part, at least, by the presence of the obstructions. So that, if the company is not required to give consideration to such obstructions not upon its right-of-way it has material bearing upon its obligation to give warning over and beyond that which is required by the statutes.

But the 7th proposition of the syllabus of the Kistler case which relates to the obligation of the Railroad Company respecting trees, weeds, brush, shrubbery and the like not on its right-of-way is not the only proposition which is germane to this case. The third syllabus also has application,

"In the absence of a statute regulating the rate of speed of railroad trains, it is not negligence for a railroad company to run its trains, in the open country, at such rate of speed as those in charge of the same may deem safe to the transportation of passengers and property, unless there are facts and circumstances which, when taken in connection with a high rate of speed, would make such speed an element or factor in constituting negligence and in such cases such facts and circumstances should be pleaded."

It is urged that the crossing here under consideration was not in the open country. We do not believe that this contention is well made, although, it must be granted that facts and circumstances may attend even in the open country which might make a railroad company liable for negligence because of excessive speed but the facts in the Kistler case, in the aspect of the negligence of the railroad company, parallel those found in the instant case in many particulars. There, the jury could well have found that neither of the occupants of the vehicle, which was curtained, heard the signals from the train. The obstructions to the view of plaintiff's decedent and his daughter were much like those found in this case. In this case at 100 feet away from the crossing the occupants of the automobile could have seen the oncoming train in time to have stopped their car before it reached the crossing. We advert to this fact, not on the question of contributory negligence, but upon the claim of the dangerous character of the crossing. If an oncoming train may be observed for a distance of a thousand feet by an approaching automobile when it is 100 feet from the crossing, we would be required to say as a matter of law that this afforded ample opportunity to a driver who was observing ordinary care in approaching a known railroad crossing to bring his automobile safely to a stop before reaching the crossing.

The case of **Shaffer, Admrx. v New York Central Railroad Co., 66 Oh Ap 417,** is reported in the Ohio Bar of May 26, 1941. One of the averments of negligence was failure to maintain a

watchman or gates or more effective signs or signalling devices. It appeared that the whistle on the locomotive was blown as it approached the crossing and that there was a flasher signal operating, although, there was no proof that a bell was rung. The train was not visible to those who approached the crossing for a distance of more than 500 feet, at which point it came around a curve. It was held that,

"The railroad company having provided a grade crossing with the usual cross-arm signs and electrically operated flashing signals, which flash as a train approaches, the locomotive of which sounds its whistle as required by law was not bound to furnish warnings to travelers on the highway in the absence of express statutory requirements to do more."

Of course the flasher signals were a form of warning to the sight not found in the instant case but the proposition which we stress is, that the court held that the railroad company was not bound to provide further warnings to travelers on the highway in the absence of express statutory requirements to do so.

We are of opinion that the directed verdict may be supported by the quotation of appellant from 3rd Elliot on Railroads, Vol. 3, §1656,

"Where a crossing is unusually dangerous because the track is curved or the view obstructed, or because of its peculiar construction or situation, it is the duty of the company to exercise such care and take such precautions as the dangerous nature of the crossing requires."

In our judgment the facts in this case do not support the claim that the crossing was unusually dangerous, although, the track was curved because the curve was 1469 feet from the crossing and there were several places on the highway at reasonable distances from the crossing at which the passengers in the Snodgrass automobile could have observed an oncoming train in time to avoid being struck. It is urged that the occupants could not see the oncoming train at reasonable distances·from the crossing because the engineer on the lead engine did not see the automobile nor hear the crash caused by the collision. The fact that the engineer did not see the automobile can not change the physical conditions under which it must be determined that the oncoming train was visible for a distance of 1000 feet or more when the automobile was 100 feet north of the track and that there was no hindrance to visibility from that point up to the crossing. The court was required to consider the evidence on the motion for directed verdict in the light of the law announced in Hamden Lodge, etc. v The Ohio Fuel Gas Company, 127 Oh St 469, namely, "was the evidence such that reasonable minds might reach different conclusions upon any material questions of fact." Upon this test and under the law we are satisfied that the trial judge was correct in resolving the question in favor of the motion.

The judgment will be affirmed.

GEIGER, PJ. and BARNES, J., concur.

### APPLICATION FOR REHEARING

No 1678.  Decided June 23, 1941

BY THE COURT:

Submitted on application of appellant for rehearing.

It is apparent that our opinion generated more heat than light in the minds of counsel for the appellant. We would command a more careful and complacent reading of the opinion and also of the briefs of the parties in conjunction with the facts as appearing in the record.

It is first urged that the court brushed aside the one question for it to decide as determined by the trial judge and counsel for both parties and the question posed is as follows:

"If the jury decides that this crossing is dangerous by reason of the ob-

structions to view, may the jury further decide that blowing the whistle and ringing the bell is not a reasonably sufficient warning of the approach of a train? Or, is the jury deprived of the right to make that decision, by reason of the fact that the obstructions are not on the railroad right-of-way?"

We stated the matter for consideration upon the appeal as follows:

"The one legal question presented is whether, under the facts appearing, there is an issue made as to the negligence of the defendant."

and we answered this question in the negative upon a full consideration of all of the facts and circumstances appearing in the case.

If counsel and the trial judge had agreed upon a determinative question, it would not be binding upon us unless we concurred, but it is obvious that counsel for defendant at no time agreed that the only question before the court was that which is set forth in the application, nor do we have anything in the record which is convincing that Judge Krehbiel determined the motion upon an answer only to the subject matter of the question. We did consider and insofar as germane and material determined every proposition set forth in the question. The difficulty from the standpoint of the appellant is that upon this record this court concluded that as a matter of law the crossing under consideration was not especially dangerous because of the obstructions sets forth in the petition. So that, there was nothing for the jury to decide upon this question.

We might have been content to have made this determination and have given no consideration to anything other or further presented and argued in appellant's brief but out of deference to counsel who had made a careful and analytical study of the case in the light of the authority of Ry. Co. v Kistler, 66 Oh St 326, we followed the pattern of the brief and considered each and every question therein discussed.

The purpose of setting forth with particularity the distances that an approaching train could be seen by an automobilist moving toward the crossing from the north is so obvious that we do not believe that it needs further elucidation.

The observation that this crossing was in the open country, in the sense that the term was employed in the Kistler case, was prompted by the insistence in appellant's brief that it should not be so characterized.

We stand upon every statement of fact asserted in our decision and are satisfied that the record will support them.

The application will be denied.

GEIGER, PJ., BARNES & HORNBECK, JJ., concur.